```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                  HOT SPRINGS DIVISION
```

UNITED STATES OF AMERICA                                    PLAINTIFF

   v.                      NO. 6:09cr60006-RTD-4

RICHARD W. ROBBINS                                          DEFENDANT

### SENTENCING MEMORANDUM

On December 8, 2009, this Court held a sentencing hearing in the above-captioned matter. Specifically addressed was whether the two-level vulnerable victim enhancement at U.S.S.G. § 3A1.1(b)(1) applies in this case. For reasons that follow, the Court holds that § 3A1.1(b)(1) should be applied to properly compute the guideline range for Defendant's sentence, and as a result, Defendant's offense level must be increased by two levels.

**I.   Standard**

In determining the vulnerability of a victim, the court must find that the defendant knew or should have known that the victim of his or her crime was "unusually vulnerable due to age, physical or mental condition, or . . . otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b)(1) & n.2. The court cannot make a blanket assumption about the applicability of the enhancement based strictly on a particular characteristic of the victim. *United States v. Anderson*, 440 F.3d 1013, 1018 (8th Cir. 2006) (holding U.S.S.G. § 3A1.1(b)(1) did not automatically apply based on advanced age of victim). Rather, the Government must demonstrate the predicate facts supporting the enhancement by a

preponderance of the evidence. *United States v. Myers*, 481 F.3d 1107, 1110 (8th Cir. 2007). In sum, application of the enhancement requires a fact-based explanation of how the characteristic in question made the victim "unusually vulnerable," and why the defendant knew or should have known of this vulnerability. *United States v. Vega-Iturrino*, 565 F.3d 430, 434 (8th Cir. 2009).

**II. Factual Findings**

Based on the information before it, the Court finds as follows:

1. The victims in this case are LS and her three minor children. LS is a white female and each of her children was fathered by an African American male.

2. In early June 2008, LS and her minor children moved from Arkadelphia, Arkansas to the nearby town of Donaldson. The racial composition of Donaldson is almost exclusively Caucasian.

3. In June 2008, LS's minor children were ages five years, nineteen months, and four months.

4. On June 15, 2008, Defendant and others discussed that they did not want the victims living in Donaldson because they associated with "niggers."

5. After this discussion, Defendant drove to the victims' home to threaten and intimidate them.

6. To threaten and intimidate LS and her children, Defendant and others agreed to construct a wooden cross. Defendant attempted

to recruit another individual to assist in the construction of the cross.

### III.  Analysis

To determine whether U.S.S.G. § 3A1.1(b)(1) should be applied in this case, the Court must first find that the victims of Defendant's crimes were "unusually vulnerable" or "particularly susceptible to the criminal conduct." *Vega-Iturrino*, 565 F.3d at 434. In this regard, the Court finds that at the time of the crimes, LS's children were ages five years, nineteen months, and four months. The crimes took place at the home of these victims, and based on their ages, the minor victims completely lacked the capacity to either prevent or defend against the violation of their rights by Defendant. *United States v. Pospisil*, 186 F.3d 1023, 1030 (8th Cir. 1999) (affirming application of § 3A1.1(b)(1) in cross burning case where victims–a mother and her children–were new in town and children were young in age). Further, based on the presence of her three young children at her home at the time of the offense conduct, LS had little ability to either prevent or defend against the violation of her civil rights. Defendant's conduct basically forced LS to choose between being the victim of Defendant's conduct or potentially placing her children at risk by attempting to resist. *United States v. Plenty*, 335 F.3d 732, 735 (8th Cir. 2003) (affirming application of § 3A1.1(b)(1) where victim was asleep at time of assault, could not contact law

enforcement, and could not flee or move her children away from the crime). Finally, at the time of the offense conduct, LS and her children had been residents of the small town of Donaldson for only a few weeks. Based on this fact, they were vulnerable due to their lack of a connection to the community. In other words, the victims lacked the sort of support network that could have served to mitigate the effects of Defendant's conduct and thereby render them less vulnerable. *Pospisil*, 186 F.3d at 1030. Thus, LS and her children were both "unusually vulnerable" and "particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1(b)(1).

The Court must now determine whether Defendant knew or should have known of the vulnerability of LS and her children. *Vega-Iturrino,* 565 F.3d at 434. The facts before the Court show that the catalyst for Defendant's conduct was the relocation of LS and her three young children from Arkadelphia to Donaldson. Particularly, Defendant did not want these individuals to reside in his predominately white town because they associated with African Americans. Based on these facts, Defendant necessarily knew about LS's children and either knew or should have known of their young ages. Further, Defendant necessarily knew LS and her children were new residents of Donaldson. Thus, Defendant knew or should have known of the vulnerability of LS and her young children.

**IV.  Conclusion**

Children have an absolute right not to be intimidated, coerced, threatened, or scared because of their race or the race of their parents.  The Court acknowledges that Defendant may have intended to create fear only on the part of LS.  However, the effects of Defendant's conduct may last the lifetime of each of his victims, even if some of those victims come to know of and fully understand Defendant's conduct in later years.

The Court holds that § 3A1.1(b)(1) should be applied when computing Defendant's offense level.  As a result, his total offense level is sixteen (16).

On December 1, 2009, the Government filed a Motion for Downward Departure Pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1.  (Doc. 98).  The Court finds that the Defendant provided truthful, complete, and reliable information about the involvement of his Co-Defendants in this case.  Defendant's cooperation and agreement to testify for the Government ultimately led to the guilty pleas entered by his Co-Defendants.  Therefore, the Government's motion is **GRANTED**.

The Government asks that Defendant be sentenced under the Federal Sentencing Guidelines at offense level twelve (12). Based on Defendant's criminal history category of I, the sentencing guidelines recommend a term of imprisonment for 10-16 months, a fine in the range of $2,000-$20,000, a term of supervised release

for 2-3 years, and a mandatory special assessment of $100 per count. Based on this recommendation and upon consideration of the sentencing factors at 18 U.S.C. § 3553(a), the Court hereby sentences Defendant to one (1) year and one (1) day in prison, a three (3) year term of supervised release, a fine of $5,000, and a special assessment of $200.

   IT IS SO ORDERED this 8th day of December 2009.

                              /s/ *Robert T. Dawson*
                              Honorable Robert T. Dawson
                              United States District Judge